IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MOLLY M. JONES, AS ADMINISTRATOR OF THE
ESTATE OF CODY M. KELLEY, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE AND WRONGFUL
DEATH BENEFICIARIES OF CODY M. KELLEY, DECEASED          PLAINTIFF

VS.                          Case No. 3:04-CV-00257 JLH

WILLIAM C. YOUNG, M.D.; DAVID M. LEWIS, M.D.;
OTOLARYNGOLOGY & FACIAL SURGERY CENTRE OF
NORTHEAST ARKANSAS, P.A.; JONATHAN C. WELSH, M.D.;
ASSOCIATED RADIOLOGISTS, LTD.; ST. BERNARDS
HEALTHCARE; and JOHN DOES 1-10                          DEFENDANTS

PLAINTIFF'S COMBINED RESPONSE AND BRIEF
IN OPPOSITION TO THE FIRST MOTION IN
LIMINE OF SEPARATE DEFENDANTS JONATHAN
C. WELSH, M.D. AND ASSOCIATED RADIOLOGISTS, LTD.

COMES NOW the Plaintiff, Molly M. Jones, by and through counsel, and for her Response to the First Motion in Limine of Separate Defendants Jonathan C. Welsh, M.D. and Associated Radiologists, Ltd. (hereinafter referred to as "Defendants"), states as follows:

LIABILITY INSURANCE AND OTHER MALPRACTICE SUITS

In parts 1, 2 and 4 of their Motion in Limine, Defendants argue that evidence relating to the Defendants' liability insurance, past malpractice suits against the Defendants, and current or past malpractice suits against expert witnesses for the Defendants should be excluded. Plaintiff recognizes that these types of evidence are, as a general rule, inadmissible. Plaintiff knows of no exception to date. However, Plaintiff requests that this evidence be allowed to be admitted, should an exception apply or should Defendants open the door. Plaintiff will agree not to attempt to introduce such evidence without receiving a prior ruling from the Court.

**EXPERT TESTIMONY**

Defendants further request that they be given protection, pursuant to Ark. Code Ann. § 16-114-207(3), which gives defendant medical care providers the option of not rendering expert testimony against themselves at trial.  Plaintiff opposes this part of Defendants' Motion in Limine and requests that it be denied.  The cited statute violates several provisions of both the United States and Arkansas Constitutions and is inapplicable, as it is a rule of evidence enacted by the Arkansas General Assembly for use in Arkansas State Court proceedings, which should not to be applied in this federal court proceeding.  Further, even if we pretend for the sake of argument that the statute were valid and applicable, there is no authority supporting the Defendants' position that the statute prohibits counsel from commenting on or alluding at trial to the Defendants' refusal to give testimony justifying their actions.

**STATUTORY PROVISION**

The challenged statute, Ark. Code Ann. § 16-114-207(3), reads:

> **No medical care provider shall be required to give expert testimony against himself or herself as to any of the matters set forth in § 16-114-206 <u>at a trial</u>. However, this shall not apply to discovery.  Discovery information can be used at a trial as in other lawsuits.**

(emphasis added).

Ark. Code Ann. § 16-114-206(a) provides that the plaintiff in a medical malpractice action has the burden of proving, by way of expert testimony, the following: (1) the degree of skill and learning that should have been possessed by the defendant medical care provider (standard of care); (2) the defendant's failure to act within the applicable standard of care; and (3) injury proximately caused by the breach of the applicable standard.

2

The challenged statue creates a special rule of evidence for medical care providers which prevents the plaintiff from questioning the defendants **at trial** in regard to the key elements of her case.  There is no limitation, however, on the areas in which a defendant may question the plaintiff.

No other state grants medical care providers such an unequal advantage.  A well-respected treatise that tracks American medical malpractice law sets out the standard across the country and Arkansas as the sole exception.  S. Pegalis and H. Wachsman, 2 American Law of Medical Malpractice § 14:9, pp. 499, 500 (1993).   In all other states:

> . . . not only is the defendant subject to cross-examination upon being called by the plaintiff, but the defendant may also be examined with regard to the applicable standards of medical care and whether his conduct was in conformance with those standards.  In fact, the plaintiff may make the defendant his or her expert witness, and ask the defendant questions which require the rendering of an opinion.

Id.  *See also* 42 Tex.Jur.3d, Healing Arts and Institutions § 238, p. 608 (1995); 70 C.J.S. Physicians and Surgeons § 122, pp. 555-58 (1987).  Arkansas is the lone state not abiding by this general rule.  Id.

There have been a number of cases where this provision and other provisions of the Medical Malpractice Act have been attacked on constitutional grounds over the quarter of a century in which it has been in effect, yet the Arkansas Supreme Court has declined in each instance to reach the issue for a variety of reasons.  *See, e.g.,* Webb v. Bouton, 85 S.W.3d 885 (Ark. 2002) (failure to have made argument below and failure to show standing); Morrison v. Jennings, 943 S.W.2d 559 (Ark. 1997) (failure to obtain ruling below and lack of standing); National Bank of Commerce v. Quirk, 918 S.W.2d 138 (Ark. 1996) (issues not properly briefed and argued to the trial court); Prater v. St. Paul Ins. Co., 739 S.W.2d 676 (Ark. 1987) (issues not briefed in the trial court, no ruling obtained below and attorney general had not been notified).

3

Most recently, in the case of Whorton v. Dixon, 363 Ark. 330, 214 S.W.3d 225 (2005), the Arkansas Supreme Court upheld the constitutionality of the statute under a "rational-basis" review, under equal protection and separation of powers analysis.  It declined to review the case under a "strict scrutiny" analysis, and declined to address the appellant's separation of powers argument, as it held that those issues were raised for the first time on appeal.

Moreover, as the present case is pending in federal court, there are certain issues in this case that were not issues in the Whorton case.  In particular, the statute in question is an Arkansas rule of evidence, which is circumvented by the Federal Rules of Evidence in this action.  This issue is discussed immediately below.

**CIRCUMVENTION OF THE FEDERAL RULES OF EVIDENCE**

In diversity jurisdiction cases, the United States Supreme Court has held that federal law governs all procedural issues in federal courts, regardless of the basis of jurisdiction.  Therefore, an applicable Federal Rule of Civil Procedure or Federal Rule of Evidence must be used instead of a corresponding state rule when a conflict arises between them.  *See* Hanna v. Plumer, 380 U.S. 460 (1965); Hughes v. Mayo Clinic, 834 F.2d 713, 717 (8th Cir. 1987).

While the Federal Rules of Evidence govern generally in diversity cases, Rule 501 provides that state law governs on the issue of privilege.  Rule 501 of the Arkansas Rules of Evidence, the general Arkansas privilege rule, deals with items which may be deemed as privileges under Arkansas law.

Ark. Code Ann. § 16-114-207(3) is often referred to as a testimonial privilege.  Upon closer review, however, it is actually a **general rule of evidence**.  Under Arkansas law, claims of privilege allow a person to: "(1) refuse to be a witness; (2) refuse to disclose any matter; (3) refuse to produce

4

any object or writing; or (4) prevent another from being a witness or disclosing any matter or producing any object or writing." Ark. R. Evid. 501. In other words, a privilege rule allows a witness to keep a secret.

Ark. Code Ann. § 16-114-207(3) does not allow a medical provider defendant to refuse to disclose his or her opinions, nor does it allow them to refuse to be a witness or produce any evidence. According to the explicit terms of the statute itself, the defendant's opinions and all evidence relevant to those opinions are subject to disclosure in discovery. They are even admissible at trial through the use of information disclosed in discovery. The only protection afforded to the medical provider by the statute is the ability to refuse to give expert testimony **at trial**. Because the defendants' opinions are not allowed to be kept a secret, the statute is clearly a general rule of evidence, rather than a rule of privilege, and is not governed by Rule 501.

The Federal Rules of Evidence govern who may give opinion testimony at trial. Rule 702 of the Federal Rules of Evidence provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 704 provides that expert testimony is allowed on an ultimate issue to be decided by the jury.

Such expert testimony as to each element of medical malpractice is required by Ark. Code Ann. § 16-114-206(a). It is hard to imagine how any expert testimony could provide more assistance to the jury than that of the defendants themselves, whether it be seen as credible or incredible. By simply hearing the defendants' explanation of what they did, why they did it, and why they believe it was either right or wrong, the jury could obtain a great deal of assistance in making its ultimate

5

decision as to whether or not malpractice has been committed.  In order to judge the credibility of the testimony, the jury should have the benefit of hearing such testimony live at trial, as they do with all other testimony.  They are able to do so in every other state and federal court in the nation.  To not require it in this case would circumvent both the general and specific stated purposes behind the Federal Rules.

The challenged statute is clearly contrary to both the spirit and the letter of the Federal Rules of Evidence, which govern this diversity action.  As such, the challenged statute is inapplicable and should not be applied.

**SEPARATION OF POWERS**

The Arkansas government is divided into three branches:  legislative, executive and judicial. Ark. Const., Art. 4, § 1.  The exercise of the power of one branch of government is forbidden by any "person, or collection of persons" who might constitute or represent one of the other branches of government.  Ark. Const., Art. 4, § 2.  Superintending control over all courts in Arkansas was first given the Arkansas Supreme Court under Ark. Const., Art. 7, § 4.  That section of the Arkansas Constitution was replaced by Ark. Const., Amend. 80, § 4, which also gives the Arkansas Supreme Court superintending control of all Arkansas courts.

Historically, Arkansas judicial doctrine called for a rigid separation of powers.  It was noted early on that the separation of powers "lies at the very foundation, and constitutes the groundwork of all American Constitutions."  State v. Hutt, 2 Ark. 282, 286 (1839).  From statehood until relatively recent times, this court consistently held to an "uncompromising interpretation of the separation of powers doctrine."  Note, Spradlin v. Arkansas Ethics Commission: A Hard-Line Approach to Separation of Powers, 48 Ark.L.Rev. 755 (1995).

6

In the case of <u>Ricarte v. State</u>, 717 S.W.2d 488 (Ark. 1986), the Arkansas Supreme Court held that the Arkansas legislature passed Uniform Rules of Evidence in an illegally-extended session. The Arkansas Supreme Court recognized that these rules were invalid, but rather than allow chaos to occur, the Court adopted the rules pursuant to its rule-making authority. The Court found that the Arkansas Constitution of 1874 confers upon the Supreme Court a general superintending control over all inferior courts of law and equity, giving it the authority to adopt rules of procedure. This holding was again recognized in the case of <u>Huckaby v. State</u>, 557 S.W.2d 875 (Ark. 1977).

Since the <u>Ricarte</u> and <u>Huckaby</u> holdings, the Arkansas Supreme Court has further expounded on this rule of law. *See* <u>State v. Sypult</u>, 800 S.W.2d 402, 404 (Ark. 1990). In the <u>Sypult</u> case, a legislative enactment dissolved the physician-patient privilege set out in Rule 503 of the Arkansas Rules of Evidence where the physician was given information concerning child abuse or neglect. <u>Id.</u> at 402-05. The policy of the state in identifying and prosecuting abusers of children was found to conflict with the policy behind the physician-patient privilege to encourage patients to communicate openly and freely with their physicians. <u>Id.</u>

The Arkansas Supreme Court held in the <u>Sypult</u> case:

> It is obvious that, in the interests of promoting important public policies and interests of the state, legislation enacted in this spirit will, on occasion, bring about conflict with rules of the court. It is equally obvious, however, that literal application of our decisions in <u>Curtis</u> and <u>St. Clair</u> to cases such as the one before us, could well open the door to total abrogation of the rules of evidence and procedure we deem vital to the interests and policies inherent in the judicial process. To protect what we hold inviolate we now declare that we will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme.

* * *

In sum, we hold that **deference to legislation involving rules of evidence and procedure will be given only to the extent the legislation is compatible with our established rules**. When conflicts arise which compromise these rules, our rules remain supreme.

Id. at 404-05 (emphasis added) (citations omitted).

Since the Sypult decision, the Arkansas Supreme Court has stricken down a requirement passed by the Arkansas General Assembly that a sixty-day notice be given to a putative defendant physician before a complaint alleging medical malpractice could be filed.  Weidrick v. Arnold, 835 S.W.2d 843 (Ark. 1992). Because this notice requirement added a condition to the requirements for commencing a civil action set out in A.R.C.P. 3, the Court struck down the notice requirement on the ground that it was superseded by Rule 3.  Id. at 845-48.

In the year 2000, the inherent judicial power to prescribe "rules of pleading, practice and procedure" flowing from a rigid Arkansas doctrine of separation of the powers was further solidified by the people's adoption of Amendment 80, Section 3 to the Arkansas Constitution, a powerful ratification of an already strong separation of powers jurisprudence.  This Amendment reads: "The [Arkansas] Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution."  Ark. Const., Amend. 80, § 3.

As is discussed above, Ark. Code Ann. § 16-114-207(3) attempts to create a general rule of evidence, allowing medical defendants to refuse to explain their actions through live opinion testimony at trial.  The Arkansas Rules of Evidence provide who can give opinion testimony at trial and the reasons therefore in Arkansas state courts.  Ark. R. Evid. 702-704.  As such, the Arkansas General Assembly lacks the authority to pass a provision in direct conflict with those rules.

Therefore, the statute should be declared invalid on the grounds that it is superseded by the Arkansas Rules of Evidence pursuant to the Arkansas separation of powers doctrine.

**EQUAL PROTECTION**

Equal protection under the law is guaranteed by both the United States and Arkansas Constitutions.  The Fourteenth Amendment to the United States Constitution provides, in part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., Amend. XIV, § 1.  The Arkansas Constitution provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."  Ark. Const., Art. 2, § 18.

"The very essence of civil liberty consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.  One of the first duties of government is to afford that protection."  Marbury v. Madison, 5 U.S. 137, 163 (1803).  The equal protection guarantee "is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

**1.      Standard of Review**

When a state statute is challenged under the equal protection doctrine, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Id. at 440.  However, where the statue "impinge[s] upon personal rights protected by the Constitution" or disadvantages a suspect class, the statute is subject to a heightened standard of review, known as "strict scrutiny."  Id.

Under strict scrutiny analysis, the statute will be upheld only if the State can show that the statute is necessary to promote a compelling state interest and that it is narrowly tailored to

9

accomplish its objectives.  Id.; Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 904-12 (1986); Dunn v. Blumstein, 405 U.S. 330, 342-43 (1972).  "If there are other reasonable ways to achieve a compelling state purpose with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference.  If it acts at all, it must choose less drastic means." Soto-Lopez, 476 U.S. at 909-10 (citing Dunn, 405 U.S. at 343).  The State of Arkansas has applied this same strict scrutiny analysis when a statute infringes upon a fundamental right.  *See* Jegley v. Picado, 80 S.W.3d 332, 350 (Ark. 2002) ("When a statute infringes upon a fundamental right, it cannot survive unless a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out the state interest.")

### 2.      Fundamental Constitutional Right to Cross-Examine Adversary

The Seventh Amendment to the United States Constitution guarantees the right to trial by jury in civil cases.  U.S. Const., Amend. VII.  This right applies to diversity actions.  Simler v. Conner, 372 U.S. 221, 222 (1963).  The Arkansas Constitution provides the same right, stating: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy . . . ."  Ark. Const., Art. 2, § 7.  The Arkansas Constitution further provides that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws."  Ark. Const., Art. 2, § 13.

"The right to confront, cross-examine and impeach adverse witnesses is **one of the most fundamental** rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases."  Adickes v. S. H. Kress & Company, 398 U.S. 144, 176 (1970) (Justice Black,

concurring) (emphasis added) *(cited by* Continental Can Company USA, Inc. v. Monsanto Company, 948 F.2d 1264, 1265 (Fed. Cir. 1991); Fisher v. Shamburg, 624 F.2d 156, 162 (10th Cir. 1980)).

> The Arkansas Supreme Court has stated, in regard to the right of cross-examination:

> We have recognized the great importance of cross examination and the wide latitude which should be permitted the cross-examiner in eliciting facts contradictory to the testimony of the witness given on direct examination. We have said that cross-examination is a leading and searching inquiry of a witness for further disclosure touching the particular matters detailed by him in his direct examination, that it serves to sift, modify or explain what has been said in order to develop facts in a view favorable to the cross-examiner, and that its objects include weakening or disproving the case of the adversary, breaking down his testimony in chief, testing his veracity, accuracy and honesty, and exhibiting the improbabilities of his testimony.

Washington National Ins. Co. v. Meeks, 458 S.W.2d 135, 137-38 (Ark. 1970).  The Meeks court went on to quote the Iowa Supreme Court on the issue of whether an offer of proof was required to preserve the issue for trial:

> The right to cross-examine is quite absolute.  It inheres in the right of the adversary to use the testimony of the witness at all.  One of its purposes is to test the credibility of the witness.  The refusal of such right cannot be justified by saying that the answer of the witness would not have been favorable to the cross-examiner.  Unfavorable answers are often as dangerous to the witness as favorable ones.  An answer unfavorable to the cross-examiner may be more incredible than a favorable one would have been.  If incredible, the credibility of the witness is thereby impaired.  The consistency of the witness also may be thus put to the test.  In Glassman v. Railway, 166 Iowa 254, 147 N.W. 757, we said that the refusal of proper cross-examination was "a denial of an absolute right, and has been generally held to be sufficient ground for reversal."

Id. at 138-39.  The Arkansas Supreme Court has held on another occasion that, "[i]n a judicial investigation the right of cross-examination is **absolute**, and not a mere privilege of the one against whom a witness may be called."  Ark. Game & Fish Comm'n v. Kizer, 253 S.W.2d 215, 218 (Ark. 1952) (citing 58 Am. Jur. 340).

The right to cross-examination is a fundamental right because it is part and parcel of one's right to access to the courts. It is fundamental to the right to a jury trial pursuant to Ark. Const., Art. 2, §§ 7 and 13. It is fundamental to the right to confrontation, cross-examination and a fair trial pursuant to U.S. Const., Amend. 7.

### 3.        Strict Scrutiny Analysis

A state legislature can make classifications that impair a citizen's fundamental rights if and only if it is pursuing a truly compelling state interest, has narrowly tailored the statute to accomplish the state's goals in enacting the statute, and has done so by the least restrictive means possible. Cleburne, 473 U.S. at 439; Soto-Lopez, 476 U.S. at 904-12; Dunn, 405 U.S. at 342-43; Jegley, 80 S.W.3d at 350. The burden of making such a showing rests squarely on the state or the proponent of the law. Id. The burden is a heavy one. Soto-Lopez, 476 U.S. at 911.

It is assumed by the Plaintiff that the State of Arkansas enacted the challenged statute in an attempt to lower the cost of health care to its citizens. It cannot be denied that the State of Arkansas has an interest in keeping down the cost of medical care. However, neither the State of Arkansas nor the Defendants can show that the State's interest is so compelling that such an infringement upon the Plaintiff's constitutional rights is necessary. Just as importantly, they cannot demonstrate in any way that this infringement upon the Plaintiff's constitutional rights has reduced or will reduce the cost of health care in the State of Arkansas. They cannot provide the Court with any proof that this statute has any effect whatsoever on the insurance premiums of medical doctors or on the way physicians practice medicine. They cannot provide the Court with any proof as to why less drastic means cannot accomplish the same goals.

12

The Ohio Court of Common Pleas set forth the Plaintiff's position clearly and forcefully in the following quote from the case of <u>Graley v. Satayaham</u>, in finding a statute enacting strict pleading requirements in medical malpractice actions to be violative of the plaintiff's equal protection rights:

> There is no satisfactory reason for this separate and unequal treatment. There obviously is "no compelling governmental interest" unless it be argued that any segment of the public in financial distress be at least partly relieved of financial accountability for its negligence. To articulate the requirement is to demonstrate its absurdity, for at one time or another every type of profession or business undergoes difficult times, and **it is not the business of government to manipulate the law so as to provide succor to one class, the medical, by depriving another, the malpracticed patients, of the equal protection mandated by the constitution**.

<u>Graley v. Satayaham</u>, 343 N.E.2d 832, 837 (Ohio Com. Pl. 1976) (emphasis added).

The Arkansas General Assembly has provided that medical care providers, and only medical care providers, are allowed the option of refusing to give live expert testimony against themselves at trial. Medical care providers, and only medical care providers, can simply deny liability in a civil action against them, and never have to explain at trial why they claim they are not at fault. Attorneys, architects, auto manufacturers, and all others who are in the position to give expert testimony against themselves at trial, must do so. If a medical care provider defendant claims comparative fault, the defendant can ask the plaintiff to testify as to whether or not they believe they did anything wrong. The plaintiff cannot, then, turn around and ask the defendant the same question.

This is clearly a classification that impinges upon the Plaintiff's constitutionally guaranteed rights. As such, the burden rests upon the State and the Defendants to come forward with the proof necessary to pass strict scrutiny analysis. Since they have not and cannot do so, the Court should

declare the challenged statute unconstitutional as violative of the equal protection clauses of both the United States and Arkansas Constitutions.

### 4.        Rational Basis Analysis

Even if we pretend for the sake of argument that the right to a fair trial by jury is not a fundamental right and that the rational basis test, as described above, applies, the challenged statute still does not pass Constitutional muster.[1]

The evidentiary rule created by Ark. Code Ann. § 16-114-207(3) prevents only the live expert testimony of a medical care provider defendant **at trial**.  It does not prevent the discovery of their opinions.  It does not prevent the introduction of their opinions into evidence through means other than live testimony.  It simply gives medical care providers the option of refusing to sit in front of the jury and explain their actions.

There can be no rational basis for such a classification.  The only basis for this classification can be to provide special treatment to medical defendants for the simple reason that they are medical providers.  As the statute does not keep the opinions of the medical providers out of evidence, it is irrational to believe that this special treatment of medical care providers will have any effect whatsoever on health care costs.  In fact, by allowing medical providers to opt out of testifying as to the standard of care, it only stands to reason that such a rule would discourage settlement and **increase** the cost of litigation and health care.

---

[1]        The Arkansas Supreme Court held in <u>Whorton v. Dixon</u>, 363 Ark. 330, 214 S.W.3d 225 (2005) that the statute passed constitutional muster under a rational basis analysis.  However, as this case deals with a violation of the equal protection clause of the United States Constitution, this Court is not bound by that decision.

As for "tort reform" laws in general, medical malpractice insurance carriers themselves have admitted that these laws do **not** affect medial malpractice insurance premiums. Victor Schwartz, General Counsel of the American Tort Reform Association stated that "many tort reform advocates do not contend that restricting litigation will lower insurance rates, and I've never said that in 30 years." Business Insurance, (19 July 1999). "Contrary to the widely-held belief, there has never been a malpractice 'crisis' insofar as that term implies that malpractice litigation is the root cause of spiking physician premiums." M. Nathanson, It's the Economy (and Combined Ratio), Stupid: Examining the Medical Malpractice Litigation Crisis Myth and the Factors Critical to Reform, 108 Penn State Law Review 1077, 1081 (2004).

Giving members of the medical community special treatment by allowing them to refuse to sit on the stand and explain their actions is not rationally related, and can never be rationally related, to a legitimate governmental objective. For the lack of a rational connection between the classification made here and the state interest sought to be served, this statutory provision cannot stand the rational basis test and is, therefore, unconstitutional.

**SPECIAL LEGISLATION**

The prohibition of special legislation has its origin in the Fourteenth Amendment to the Arkansas Constitution, which states: "The General Assembly shall not pass any local or special act." Ark. Const., Amend. 14; Owen v. Dalton, 757 S.W.2d 921 (1988). "An act is special if, by some inherent limitation or classification, it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate . . . ." Arkansas Health Services Commission v. Regional Care Facilities, Inc., 93 S.W.3d 672, 676 (2002).

In determining whether a legislative act is special legislation, the court looks "to its substance and practical operation, rather than to the form or phrasing of the act; otherwise, the prohibition against special and local legislation . . . could easily be circumvented." Id. at 678 (quoting Knoop v. City of Little Rock, 638 S.W.2d 670 (1982). In cases of special legislation, the "rational basis" test is applied. Eady v. Lansford, 92 S.W.3d 57, 61 (Ark. 2002). As the Arkansas Supreme Court illustrated in the Eady case, the determinative factor regarding the constitutionality of "special legislation," is whether the General Assembly acted arbitrarily, meaning there must be a rational connection between the means – the legislation – and the end – controlling health care costs. Id. at 61-62.

Plaintiff has analyzed the statute in question under the rational basis test above. This same analysis applies here. As the statute cannot be upheld under this test, it should be stricken down as special legislation

**NO BASIS FOR MOTION IN LIMINE**

Even if we pretend for the sake of argument that Ark. Code Ann. § 16-114-207(3) were valid and applicable in federal court, there is no legal basis for the granting of the Defendants' Motion in Limine. The Defendants are not entirely clear in their brief as to the extent of the requested relief. However, it appears that the Defendants may be seeking not only to limit their testimony in accordance with the statute, but also to prevent the Plaintiffs from either asking questions that the Defendants may refuse to answer, or to alluding in argument to the Defendants' failure to testify.

It should first be noted that the Defendants cite no authority in support of their request, other than the statute itself. The statute itself provides only that medical care providers shall not be required to give expert testimony against themselves **at trial**. It provides that the rule does not apply

16

to discovery and that discovery information can be used at trial as in any other case. It does not provide that the opposing attorney may not ask them their opinions. It does not provide that the opposing attorney may not allude in argument to the defendant's refusal to give opinion testimony.

The general rule in civil cases as to a party's failure to testify has been stated by the Arkansas Supreme Court as follows:

> The failure of a party to testify in a civil case about facts peculiarly within his or her knowledge is a circumstance which may be looked upon with suspicion by a trier of fact. The failure to testify gives rise to the presumption that the testimony would have been against the party's interest. Counsel may argue every plausible inference which could be drawn from the testimony.

Allred v. Demuth, 890 S.W.2d 578, 581 (Ark. 1994). This general rule has not been superseded by the cited statute, as the statute does not address the issue of whether the defendants' failure to testify can be argued.

Likewise, the statute does not provide that plaintiffs' attorneys may not ask the opinion of a medical care provider during examination. The cited statute merely states that a medical care provider defendant shall not be **required** to give expert testimony against themselves at trial. There is no provision stating that they cannot **voluntarily** give such testimony. Moreover, there is no way to know whether or not the defendant will voluntarily give such testimony until the question is asked. There is simply no provision keeping from the jury the fact that the defendant has refused to testify.

**CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court reserve its ruling on parts 1, 2, and 4 of their First Motion in Limine and deny part 3 of the same. Plaintiff requests that Ark. Code Ann. § 16-114-207(3) be held inapplicable to this proceeding and/or in violation of both the United States and Arkansas Constitutions. In any event, the Plaintiff should be permitted to ask for the

17

Defendants' opinions at trial and, upon any refusal to so testify, the Plaintiff should be allowed to argue based upon the Defendants' refusal.

Respectfully submitted,

PLAINTIFF, MOLLY M. JONES, AS ADMINISTRATOR OF THE ESTATE OF CODY M. KELLEY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE AND WRONGFUL DEATH BENEFICIARIES OF CODY M. KELLEY, DECEASED

By:     /s/ Robert L. Coleman
Robert L. Coleman, Ark. Bar No. 80031
Jeremy M. Thomas, Ark. Bar No. 01136
REID, BURGE, PREVALLET & COLEMAN
417 N. Broadway, P.O. Box 107
Blytheville, AR  72316-0107
Telephone:  (870) 763-4586
Fax No:  (870) 763-4642

and

Wendell L. Hoskins, II, Ark. Bar No. 93070
LAW OFFICE OF WENDELL L. HOSKINS II
404 Ward Avenue, P.O. Box 1115
Caruthersville, MO 63830
Telephone:  (573) 333-2600
Fax No:  (573) 333-2041

18

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 23, 2007, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF System which will send notification of such filing to the following attorneys of record:

J. Kendall Cook: kcook@mwsgw.com
Walter B. Cox: wcox@coxfirm.com
Paul D. McNeill: pmcneill@wlpmm-firm.com
Jason Mark Milne: jmilne@barrettdeacon.com
Paul D. Waddell: pwaddell@barrettdeacon.com


 /s/ Robert L. Coleman                              
Robert L. Coleman