# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

MOLLY M. JONES, as Administrator of the                                                    PLAINTIFF
ESTATE OF CODY M. KELLEY, Individually, and on
Behalf of the Estate and Wrongful Death Beneficiaries of
Cody M. Kelley, Deceased

v.                                          No. 3:04CV00257 JLH

WILLIAM C. YOUNG, M.D., *et al.*                                                         DEFENDANTS

## OPINION AND ORDER

Molly M. Jones is the mother of Cody Kelley, who died on July 23, 2002, allegedly because of a brain abscess that resulted from a severe ear infection. Cody was eleven years of age. Jones brings this action individually, as administrator of Cody's estate, and on behalf of his estate and wrongful death beneficiaries against William C. Young, M.D.; David M. Lewis, M.D.; Otolaryngology & Facial Surgery Centre of Northeast Arkansas, P.A.; Jonathan C. Welsh, M.D.; Associated Radiologists, Ltd.; St. Bernards Healthcare; and John Does 1-10.

On July 22, 2002, Jones took Cody to the Otolaryngology & Facial Surgery Centre ("Otolaryngology Centre") where he was seen by Dr. Lewis, who ordered a CT scan. Lewis sent Cody to St. Bernards Healthcare where the CT scan was performed by Dr. Welsh, a radiologist. The CT scan showed an abscess formation in the left cerebellar hemisphere of Cody's brain. According to the complaint, that condition needed immediate surgical intervention to prevent Cody's death. Dr. Welsh reviewed the CT scan and attempted to talk to Dr. Lewis but was unable to do so because the CT scan was not performed until 5:56 p.m., by which time Dr. Lewis had left his office. Dr. Young was on-call for the Otolaryngology Centre, so Dr. Welsh contacted Dr. Young and discussed the results of the CT scan with him. Dr. Young allegedly instructed Dr. Welsh to send Cody home and have him visit the Otolaryngology Centre at 8:30 a.m. the next morning, July 23. Cody was

released and sent home.  He died in the early morning hours of July 23.

Jones has filed a motion for partial summary judgment and a related motion to strike and exclude the testimony of defendants' expert, Dr. Michael Radetsky.  St. Bernards Healthcare has filed a motion for summary judgment.  Jones has filed a motion to amend her complaint.  For the reasons stated hereinafter, Jones's motion for partial summary judgment and the related motion to strike and exclude the testimony of Dr. Radetsky will both be denied; the motion for summary judgment filed by St. Bernards Healthcare will be denied; and the motion to amend complaint will be granted in part and denied in part.

## I.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  A genuine issue of material fact exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

On February 14, 2007, Jones filed her motion for partial summary judgment on the issue of liability as to defendants Young, Lewis, the Otolaryngology Centre, Welsh, and Associated Radiologists, Ltd., arguing that the defendants had failed to designate any nonparty expert witness as required by Rule 26(a)(2) of the Federal Rules of Civil Procedure and therefore were unable to meet proof with proof on the issues of liability.  Thereafter, the defendants identified Dr. Radetsky, who submitted an affidavit and, after the trial was continued, was deposed.  His testimony creates

a genuine issue of material fact on the issues of liability.

In her motion to strike, Jones argues that Dr. Radetsky should be excluded from trial because he refused to answer a question regarding the amount of income that he earns doing work as a trial consultant. The parties have cited cases ruling both ways on the issue of whether an expert's income can be discovered. In *Behler v. Hanlon*, 199 F.R.D. 553 (D. Md. 2001), the court explained:

> The importance of credibility of witnesses to the trial of cases cannot be overstated, and this is especially true with respect to expert witnesses. The rules of evidence provide frequent reminders of the importance of credibility issues in trials. Rule 611(b) defines the scope of cross-examination to include the subject matter of testimony developed during direct examination, as well as matters affecting the credibility of the witness. Rule 104(e) teaches that the mere fact that the court has admitted evidence at trial does not mean that it must be given any particular weight by the fact finder, and preserves the right of opposing parties to attack the credibility of witnesses.
>
> * * *
>
> Although not directly covered by a specific rule of evidence, a witness may be impeached by showing that he or she is biased, has an interest in the outcome of the litigation, is prejudiced in some relevant way, or has a motive to testify in a particular way. . . . [T]he fact that an expert witness may have a 20 year history of earning significant income testifying primarily as a witness for defendants, and an ongoing economic relationship with certain insurance companies, certainly fits within the recognized examples of bias/prejudice impeachment, making such facts relevant both to the subject matter of the litigation, and the claims and defenses raised . . . .

*Id*. at 556-57 (citations and footnotes omitted). Eighth Circuit Model Jury Instruction (Civil) No. 3.03 states that in deciding what testimony to believe, the jury may consider "*any* motives a witness may have for testifying a certain way . . . ." (Emphasis added.) The income that an expert derives from litigation-related activities and whether that income is predominantly earned from plaintiffs or defendants relates to the motives that a witness may have for testifying a certain way. As the Supreme Court of Kentucky has stated, "the jury should be able to assess possible bias on the part of an expert witness if it is made aware of the amount and percentage of gross income attributable to providing expert witness services." *Primm v. Isaac*, 127 S.W.3d 630, 637 (Ky. 2004). Jones is

entitled to inquire of Dr. Radetsky regarding the extent of the income that he earns in litigation-related matters.

However, the fact that Dr. Radetsky failed to provide that information during his deposition does not justify striking his testimony at trial. The appropriate response to Dr. Radetsky's refusal to answer a question would have been for Jones to file a motion to compel discovery pursuant to Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure. No such motion was filed. Dr. Radetsky was deposed on April 24, 2007, nearly three months before the discovery deadline, so there was ample time to file a motion to compel. Had a motion to compel been filed, had an order been entered compelling Dr. Radetsky to answer, and then had Dr. Radetsky refused to answer, the Court might have imposed sanctions pursuant to Rule 37(b). Such potential sanctions could have included barring Dr. Radetsky's testimony at trial. However, as noted, no motion to compel was filed, so Dr. Radetsky has never been ordered to answer the question regarding how much of his income is derived from litigation-related activities. The Court will not strike and exclude the testimony of Dr. Radetsky.

Because Dr. Radetsky's testimony is sufficient to create a genuine issue of material fact, and because the Court will not strike or exclude the testimony of Dr. Radetsky, Jones's motion for partial summary judgment will be denied.

**III.**

On February 15, 2007, St. Bernards Healthcare filed a motion for summary judgment arguing that Jones had no expert testimony to establish the standard of care as required by Ark. Code Ann. § 16-114-206 or that St. Bernards Healthcare's breach of the standard of care proximately caused injury to Cody. Jones has since obtained expert testimony on the standard of care, and St. Bernards Healthcare concedes that it cannot now obtain summary judgment on that point. St. Bernards

Healthcare still contends that Jones has not cited to any expert that opines that a specific, identifiable breach of any standard of care by St. Bernards proximately caused Cody's death.

There is evidence from which a jury could reasonably conclude that Jones and Cody arrived at St. Bernards Healthcare for the CT scan at approximately 3:30 p.m.  Even though the need for the CT scan was urgent, St. Bernards Healthcare did not schedule the scan until 5:56 p.m. According to the Affidavit of Tracy Daly, an expert witness for Jones, the failure of personnel at St. Bernards Healthcare to arrange the emergency CT scan until 5:56 p.m. was a breach of the applicable standard of care.

Jones also states in her affidavit that she was told by nurses at St. Bernards Healthcare that they had spoken with Dr. Lewis after the CT scan, and that Dr. Lewis had said that Cody was supposed to go home.  However, they had not spoken to Dr. Lewis.  Because the CT scan was not completed until nearly 6:00 p.m., Dr. Lewis was not in the office when Dr. Welsh, who conducted the CT scan, called to report the results.  Dr. Welsh was referred to Dr. Young, who was "on call" for the Otolaryngology Centre.  It was Dr. Young who gave the instructions for Jones to take Cody home and have him return to the Otolaryngology Centre the next morning, not Dr. Lewis.  Dr. Young had never seen Cody.  According to the affidavit of Jones, Dr. Lewis told her "that if the CT scan showed that the infection had gone up into the brain, then Cody would need to have emergency surgery that night, but if the CT scan did not show the infection going up into the brain, he would still need to be put in the hospital on IV antibiotics."  The written instructions of Dr. Lewis included:

1. STAT service
2. To call concerning the results as soon as possible
3. Hold patient (at hospital)
4. Check in admissions located on the ground floor.

According to the Affidavit of Kathleen B. Fox, another expert witness for Jones, the failure of the nurses to follow through with Dr. Lewis's orders by allowing Cody to leave the facility without

confirming the discharge orders with the physician was a deviation from the applicable standard of care.

Thus, there is evidence from which a jury could reasonably conclude that, but for the deviation from the applicable standard of care by personnel of St. Bernards Healthcare, Cody would not have been discharged on the evening of July 22; and had adequate communication been established and the orders of the treating physician, Dr. Lewis, been followed, Cody would have been transferred to another facility for emergency surgery. There is evidence from which a jury could reasonably conclude that emergency surgery would have prevented Cody's death.

In sum, there is evidence from which a jury could reasonably conclude that specific, identifiable breaches of the standard of care by personnel of St. Bernards Healthcare proximately caused Cody Kelley's death.

### IV.

Jones has filed a motion asking for leave to file an amended complaint. Jones wishes to amend the complaint so as to add as defendants the insurers who provide liability insurance coverage to St. Bernards Healthcare; to add factual information not known at the time of the filing of the complaint; to add a cause of action based on the theory of joint venture; and to add a claim for punitive damages. Leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Delay, alone, is not a sufficient reason for denying leave to amend. *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981). "The delay must have resulted in prejudice to the party opposing the motion." *Id*. Furthermore, "that prejudice must be balanced against the hardship to the moving party if [the motion to amend] is denied." *Id*.

The first issue is whether Jones should be allowed to amend so as to add as defendants the liability carriers for St. Bernards Healthcare, St. Paul Fire & Marine Insurance Company, and St.

Paul Medical Liability Insurance Company.

Arkansas law provides that a claim for medical injury must be brought within two years after the date of the wrongful act. *See* ARK. CODE ANN. § 16-114-203(a) (Repl. 2006). Here, as noted, the wrongful act occurred on July 22, 2002. Jones filed her complaint on July 21, 2004, one day before the statute of limitations expired. At that time, she did not know who provided liability insurance to St. Bernards Healthcare. She named as defendants John Does 1-10 and alleged in paragraph 14 of the complaint, "John Doe 4 is the liability carrier for the purportedly non-profit St. Bernards defendants, and is properly a defendant herein pursuant to Ark. Code Ann. § 23-79-210, which authorizes a direct action against the liability carrier for a nonprofit entity." One of her lawyers filed an affidavit along with the complaint and stated under oath that the identities of the John Doe defendants were unknown. St. Bernards Healthcare identified its liability carriers in initial disclosures on January 7, 2005, and in answers to interrogatories on May 26, 2005. St. Bernards Healthcare argues that it is too late to add its liability carrier.

Rule 15(c) of the Federal Rules of Civil Procedure provides, in pertinent part:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Here, there is no doubt that, within the period provided by Rule 4(m) for service of the

summons and complaint, St. Bernards Healthcare's liability insurance carriers had notice of the institution of this action. They do not claim to the contrary, nor do they argue that they will be prejudiced by having to defend at this point. The Court has no doubt that these liability insurance carriers have been defending this action from the inception.[1] The insurance companies have known that, but for the fact that at the time she filed her complaint Jones did not know who provided liability coverage to St. Bernards Healthcare, she would have named them as defendants in the action.

> The issue of whether an amended complaint identifying a defendant by name will "relate back" to a previously filed complaint against a "John Doe" defendant has typically arisen in the context of statute of limitations issues. Such an amendment ordinarily will *not* be treated as relating back to the prior pleading, unless certain conditions set forth in FED. R. CIV. P. 15(c) are satisfied. *See, e.g., Barrow v. Wethersfield,* 66 F.3d 466, 467 (2d Cir.1995) ("We have stated that '[i]t is familiar law that "John Doe" pleadings cannot be used to circumvent statutes of limitations because replacing a "John Doe" with a named party in effect constitutes a change in the party sued.' Thus, '[s]uch an amendment may only be accomplished when all of the specifications of FED. R. CIV. P. 15(c) are met.'") (citations omitted); *see generally* Steven S. Sparling, Note, *Relation Back of "John Doe" Complaints in Federal Court: What You Know Can Hurt You,* 19 CARDOZO L. REV. 1235 (1997).

*Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001). Here, however, the John Doe pleading was not a means of circumventing the statutes of limitations. The Arkansas statutes provide for the use of John Doe pleadings when the identity of a tortfeasor is unknown. Ark. Code Ann. § 16-56-125 provides:

> (a) For the purposes of tolling the statute of limitations, any person, firm, or corporation may file a complaint stating his or her cause of action in the appropriate court of this state, whenever the identity of the tortfeasor is unknown.

---

[1] Barrett & Deacon, which is defending St. Bernards Healthcare in this action, and its predecessor, Barrett, Wheatley, Smith & Deacon, have represented the St. Paul Insurance Companies for many years, as they did in *Harvill v. Community Methodist Hosp. Ass'n*, 302 Ark. 39, 786 S.W.2d 577 (1990) and *St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County*, 348 Ark. 197, 73 S.W.3d 584 (2002). Barrett & Deacon's Martindale-Hubbell entry continues to list the St. Paul Insurance Companies as a client.

>(b)(1) The name of the unknown tortfeasor shall be designated by the pseudo-name John Doe or, if there is more than one (1) tortfeasor, John Doe 1, John Doe 2, John Doe 3, etc.
>
>>(2) Upon determining the identity of the tortfeasor, the complaint shall be amended by substituting the real name for the pseudo-name.
>
>(c) It shall be necessary for the plaintiff or plaintiff's attorney to file with the complaint an affidavit that the identity of the tortfeasor is unknown before this section shall apply.

It would defeat the purpose of Ark. Code Ann. § 16-56-125 not to allow an amendment substituting the real name of a tortfeasor for "John Doe." That statute provides that limitations are tolled if an unknown tortfeasor is identified as "John Doe" and the plaintiff so states in an affidavit, as was done here. The Arkansas Supreme Court has twice said that such a pleading still must meet the requirements of Rule 15(c) of the Arkansas Rules of Civil Procedure, the relevant portion of which is identical to Rule 15(c) of the Federal Rules of Civil Procedure. *See Stephens v. Petrino*, 350 Ark. 268, 276, 86 S.W.3d 836, 841 (2002); *Harvill v. Community Methodist Hosp. Ass'n*, 302 Ark. 39, 46, 786 S.W.2d 577, 581 (1990). *Stephens* followed *Harvill* on this point, and *Harvill* cited *Williams v. Avis Transport of Canada, Ltd.*, 57 F.R.D. 53 (D. Nev. 1972). The decision in *Williams* on this issue was based on the fact that no federal statute or rule provides for fictitious parties. *Id.* at 56. Here, however, the Arkansas statutes of limitations govern, and one of those statutes expressly provides that limitations may be tolled by naming an unknown tortfeasor as "John Doe" and then later substituting the real name for the fictitious name. ARK. CODE ANN. § 16-56-125 (Repl. 2005). In both *Stephens* and *Harvill*, the crucial fact seemed to be that the plaintiff had made a strategic decision not to pursue the defendant that later was sought to be substituted for "John Doe." *Stephens*, 350 Ark. at 278, 86 S.W.3d at 842; *Harvill*, 302 Ark. at 45, 786 S.W.2d at 581. Neither section 16-56-125 nor Rule 15(c) is designed to protect a plaintiff from the bar of limitations when the plaintiff has made a strategic decision not to pursue the defendant until after the period of

9

limitations has expired.  The results in *Stephens* and *Harvill* are consistent with the purpose of section 16-56-125, which is designed to protect a plaintiff from the bar of limitations when he does not know the name of the tortfeasor, and they are consistent with Rule 15(c)(3), which is designed to protect a plaintiff from the bar of limitations when a plaintiff thinks he knows the name of the tortfeasor but is mistaken.  What the Supreme Court of Arkansas appears to be saying in *Stephens* and *Harvill* is that even when a plaintiff names "John Doe" as a defendant, an amendment will relate back only if (1) the claim or defense asserted in the amended pleading arose out of the occurrence in the original pleading; (2) the amendment changes the party or the naming of the party against whom a claim is asserted; and (3) within the time for service of the summons and complaint the party to be brought in by amendment (A) has received such notice of the institution of the action so as not to be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for the plaintiff's ignorance of his identity, the action would have been brought against him.  The court cannot have meant to say that the "but for a mistake" requirement must be met for a "John Doe" pleading to relate back because a plaintiff who follows section 16-56-125 is not mistaken – while he does not know the name of the tortfeasor, he is not mistaken because he knows that he does not know.  Applying the "but for a mistake" requirement to John Doe pleadings filed pursuant to section 16-56-125 would have the effect of nullifying that statute.

Moreover, apart from section 16-56-125, the proposed amendment would relate back.  The parties do not dispute the fact that St. Bernards Healthcare is a nonprofit entity.  As such, St. Bernards Healthcare is not subject to suit for a tort.  *See Low v. Insurance Co. of North America*, 364 Ark. 427, 270 S.W.3d 670 (2005).  However, a person injured by a nonprofit corporation may bring a direct action against an insurer that provides liability insurance coverage to the nonprofit entity. *See* ARK. CODE ANN. § 23-79-210 (Repl. 2004).  Because of the Arkansas doctrine of charitable

immunity, St. Bernards Healthcare's insurance carriers all along have been the parties with a financial interest in the outcome of this case. "When the named defendant and the party that the plaintiff actually intended to sue have an 'identity of interest,' an amendment adding the proper party will relate back if the other requirements of Rule 15(c) have been satisfied." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1499, at 143-46 (2d ed. 1990) (footnotes omitted). For purposes of this action, there is an identity of interest between St. Bernards Healthcare and the liability insurance carriers.

For these reasons, the Court will permit the amendment to the complaint so as to substitute St. Paul Fire & Marine Insurance Company and St. Paul Medical Liability Insurance Company as defendants in place of John Doe No. 4. The Court is convinced that permitting this amendment makes no substantive change to the posture of this case, that in fact the liability insurance carriers have been defending it all along, and that substantial justice requires that they be named as defendants against whom a judgment could be executed should Jones prevail.

The other proposed amendments are more troublesome because if permitted they would substantially change the case and would do so very late in the day. On March 3, 2006, the Court entered an amended final scheduling order setting this case for trial on April 16, 2007, with a deadline of January 16, 2007, for amending pleadings, and a discovery deadline of February 1, 2007. Then, on February 14, 2007, Jones filed her motion for summary judgment. On the next day, St. Bernards Healthcare filed its motion for summary judgment. On March 5, 2007, Jones filed motions *in limine* to exclude the testimony of Dr. Radetsky and Dr. Richard M. Chesbrough on the ground that both expert witnesses were identified after the deadline for expert disclosures. The Court conducted a telephone conference on March 8, 2007, at which it became apparent that fairness to all parties required that the case be continued so as to permit full discovery of expert testimony. The

Court then extended the time for Jones to respond to St. Bernards Healthcare's motion for summary judgment so as to give her an opportunity to obtain experts relevant specifically to that defendant. The Court entered an amended final scheduling order setting the trial for the week of October 15, 2007, and resetting all of the deadlines except the deadline for amending pleadings. The Court made a conscious decision not to set a new deadline for amending pleadings. This case was already, at that time, almost three years old, and the Court was unwilling to permit substantive changes in the pleadings that could necessitate additional continuances and thus further delay the conclusion of this case.

Jones's proposed amendments to allege that a joint venture existed among the defendants and to state a claim for punitive damages would constitute substantive changes. Her motion for leave to amend was filed on August 16, 2007, exactly one month after the discovery deadline. Although Jones argues that these amendments would not require additional discovery, the defendants understandably disagree. The defendants have conducted no discovery with a view toward defending an action alleging that they were engaged in a joint venture, nor have they conducted discovery with a view toward defending a claim for punitive damages. They should be entitled to conduct some discovery about the nature of Jones's claims, at least to the extent of submitting interrogatories and perhaps reopening some of the depositions. They also should be allowed time within which to file dispositive motions attacking those claims, but the motion deadline was August 16, 2007, the date that Jones filed her motion for leave to amend. Trial will begin on October 15, 2007. If the amendment adding these new claims were permitted, the defendants would be deprived of any opportunity to challenge the new claims in a Rule 56 motion. Permitting these amendments so close to trial would prejudice the defendants.

It is too late. This is not a matter of blaming or criticizing any lawyer or any party in this

12

case. Who or whether anyone is at fault is not the point. The point is that after more than three years of litigation this case will be tried in just over a month, and it is simply too late to permit pleadings to be amended in ways that would substantially change the case to be tried. To do so would deprive the defendants of significant rights protected by the Federal Rules of Civil Procedure. In comparison, the hardship to Jones in denying leave to amend is not as great. She will be given a full and fair opportunity to prove that she is entitled to compensation for the death of her son.

## CONCLUSION

Plaintiff's motion for partial summary judgment is DENIED. Document #41. The motion for summary judgment on behalf of St. Bernards Healthcare is DENIED. Document #45. Plaintiff's motion to exclude the testimony of Dr. Michael S. Radetsky is DENIED. Document #80. The motion for leave to amend complaint is GRANTED IN PART and DENIED IN PART. Document #96. St. Paul Fire & Marine Insurance Company and St. Paul Medical Liability Insurance Company are hereby substituted as defendants in place of John Doe No. 4. The Clerk is directed to add those two parties as defendants in the style of the case. In all other respects, the motion to amend the complaint is denied.

In addition to these motions, motions *in limine* are pending. Those motions will be addressed at a pretrial conference either the week before or the morning of trial.

IT IS SO ORDERED this 10th day of September, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE